IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**FRANKLYN JAMES ROGERS**                                                                PLAINTIFF

v.                                    No. 3:11–CV–270–BD

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

  Franklin James Rogers sought judicial review of the denial of his applications for disability income benefits and supplemental security income. Mr. Rogers last worked as a forklift driver. His applications followed the loss of his job. Mr. Rogers based disability on his back and neck, a skin disorder, chronic obstructive pulmonary disease ("COPD"), sleep apnea, a learning disability, and stress.[1] At his hearing, Mr. Rogers testified that he had psoriasis over 73% of his body.[2] He estimated that, if placed in a job, he would miss 16 or 17 days of work per month due to psoriasis and back pain.[3]

  **The Commissioner's decision**. After considering Mr. Rogers's applications, the Commissioner's ALJ determined that although Mr. Rogers had severe impairments— obesity, degenerative disc disease of the cervical and lumbar spines, and sleep

---

[1] SSA record at p. 190.

[2] *Id*. at p. 45.

[3] *Id*. at p. 51.

apnea[4]—Mr. Rogers had the residual functional capacity ("RFC") to do light work with specified limitations.[5] The ALJ found that chest pain, psoriasis, and COPD, were not severe impairments, and found that the alleged learning disability was not medically determinable.[6] Because a vocational expert identified jobs a person with Mr. Rogers's RFC could do, the ALJ concluded that Mr. Rogers was not disabled under the Social Security Act.[7] After the Commissioner's Appeals Council denied Mr. Rogers's request for review,[8] the ALJ's decision became a final decision for judicial review.[9] Mr. Rogers filed this case to challenge the ALJ's decision.

**Mr. Rogers's arguments**. Mr. Rogers raised many issues to challenge the ALJ's decision, but his arguments focus on the ALJ's consideration of psoriasis, COPD and the

---

[4] *Id*. at p. 13.

[5] *Id*. at p. 15. The ALJ imposed the following limitations: Mr. Rogers must have a sit/stand option; he cannot climb ladders, ropes, or scaffolds; and he must avoid concentrated exposure to fumes, cold, heat and sun exposure.

[6] *Id*. at p. 14.

[7] *Id*. at p. 18.

[8] *Id*. at p. 1.

[9] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

alleged learning disability. The court's discussion of the arguments were consolidated for judicial efficiency.

Credibility. Because medical evidence did not support Mr. Rogers's allegations of disabling limitation due to psoriasis, COPD, and learning disability, the success of Mr. Rogers's case depended upon the ALJ's assessment of credibility. The ALJ discounted the credibility of Mr. Rogers's allegations. To challenge that assessment, Mr. Rogers complained that the ALJ failed to discuss inconsistencies in the record.[10]

An ALJ has a statutory duty "to assess the credibility of the claimant…."[11] To evaluate Mr. Rogers's credibility, the ALJ followed the required two-step process[12] and considered the required factors.[13] Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.

---

[10] Docket entry # 11, pp. 15-18.

[11] *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[12] *See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[13] In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

"Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."[14] The ALJ discussed inconsistencies in the evidence as a whole.[15] For example, Mr. Rogers based disability in part on sleep apnea, but he testified that his sleep improved with the use of a continuous positive airway pressure therapy machine.[16] As another example, Mr. Rogers based disability on his back and neck.[17] He maintained his back and neck prevented him from working,[18] but diagnostic testing provided no reason for such limitation.[19] The ALJ properly discounted Mr. Rogers's complaints of pain and limitation because they were inconsistent with the evidence as a whole.[20]

---

[14] *Polaski*, 739 F.2d at 1322.

[15] SSA record at pp. 15-17.

[16] *Id*. at p. 42-43.

[17] *Id*. at p. 190

[18] *Id*. at p. 47.

[19] *Id*. at p. 312 (MRI of cervical spine showing broad based central disc protrusion at discs C5-6, causing indentation on the anterior aspect of the thecal sac with spinal stenosis with the AP diameter of spinal canal measuring approximately 8 mm and mild narrowing of bilateral neural formamen slightly more prominent on the left side); p. 315 (displacement cervical disc without any disease or disorder of the spinal cord).

[20] *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Psoriasis. "[P]soriasis is a chronic, non-contagious disease characterized by inflamed lesions covered with silvery-white scabs of dead skin."[21] Mr. Rogers argues that the ALJ should have found psoriasis was a severe impairment at step two of the disability-determination process.[22] He maintains that his psoriasis met the step-three requirements for listing 8.05[23] and argues that the ALJ should have included limitations flowing from psoriasis in the hypothetical question at step five.[24]

The step-two aspect of Mr. Rogers's argument provides no basis for relief because step two directs a conclusion of "non-disabled" if the claimant fails to prove a severe impairment so as to weed out claimants whose abilities to work are not significantly limited.[25] If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments. Here, Mr. Rogers met his burden to show a severe impairment, so his applications proceeded to step three. The record shows that

---

[21] Maureen Haggerty, 5 The Gale Encyclopedia of Med. 3613 (4th ed.).

[22] Docket entry # 11, pp. 2-4.

[23] *Id*. at pp. 5-6.

[24] *Id*. at p. 7.

[25] *Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (concurring and stating that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

the ALJ considered all of the medical evidence and all of Mr. Rogers's impairments. Even if his psoriasis was a severe impairment, no harm flowed from finding that the psoriasis was non-severe because Mr. Rogers proceeded to the next step.

Mr. Rogers's step-three argument provides no basis for relief because no objective medical evidence established the required severity. Listing 8.05 applies to dermatitis—including psoriasis—"with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."[26] "Persist" means "the longitudinal clinical record shows that, with few exceptions, [the claimant's] lesions have been at the level of severity specified in the listing."[27] Meeting the severity requirement requires "information about the onset, duration, frequency of flare-ups, and prognosis of [the] skin disorder; the location, size, and appearance of lesions; and, when applicable, history of exposure to toxins, allergens, or irritants, familial incidence, seasonal variation, stress factors, and [the clamant's] ability to function outside of a highly protective environment."[28]

The medical evidence in Mr. Rogers's case did not establish severity. Dermatologist David H. Weingold diagnosed Mr. Rogers with psoriasis on January 15,

---

[26] 20 C.F.R. pt. 404 subpt. P, app. 1, § 8.05.

[27] *Id*. at § 8.00G.

[28] *Id*. at § 8.00B.

2009.[29]  At that time, Dr. Weingold reported inflamed skin patches on Mr. Rogers's face, chest, back, arms, thighs and calves.  Dr. Weingold estimated the patches covered 30% of Mr. Rogers's body surface.

Five weeks later—on February 25, 2009—Mr. Rogers's primary care physician ("PCP") characterized the skin as intact without lesions or rashes.[30]  On October 12, 2009, the PCP found no skin rash.[31]  On October 2, 2010, an emergency room physician found no skin rashes.[32]

The only contrary medical evidence was a PCP note stating that Dr. Weingold had characterized Mr. Rogers's condition as severe and that Mr. Rogers's condition had "not been alleviated by medications either oral or topical."[33]  The PCP's treatment notes contradicted that characterization.

---

[29] SSA record at pp. 558-59.

[30] *Id*. at p. 274.

[31] *Id*. at pp. 554-55.

[32] *Id*. at p. 514.

[33] *Id*. at p. 557.

The PCP's treatment notes reflected periodic treatment for psoriasis[34]—not continuous treatment as required by listing 8.05. The longitudinal clinical record did not show (with a few exceptions) that Mr. Rogers's lesions were extensive and persisted for at least three months despite continuing treatment as prescribed. Mr. Rogers testified that 70% of his body was covered with patches, but the medical evidence established few skin eruptions. Mr. Rogers did not establish the requirements for listing 8.05.[35]

Mr. Rogers's step-five complaint—that the ALJ should have included psoriasis in the hypothetical question to the vocational expert—provides no basis for relief because "the ALJ may exclude any alleged impairments…properly rejected as untrue or unsubstantiated."[36] The ALJ rejected Mr. Rogers's allegations about psoriasis by characterizing psoriasis as a non-severe impairment. The rejection was proper because

---

[34] *See id*. at p. 382 (on Feb. 24, 2009, prescribing Soriatane for psoriasis); p. 318 (on May 15, 2009, explaining why Mr. Rogers was not working and listing no medications for psoriasis); p. 203 (on July 19, 2009, appealing the initial denial of his applications and listing no medications for psoriasis); p. 213 (on Sept. 8, 2009, appealing denial of applications on reconsideration and listing medications for psoriasis); p. 541 (on Sept. 21, 2010, updating medication list, but including nothing for psoriasis).

[35] *Accord Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) ("[A]mple evidence exists…to support the ALJ's conclusion that…restrictive pulmonary disease was not an 'impairment' matching a listing for chronic pulmonary insufficiency.).

[36] *Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) (internal quotations and citations omitted).

the objective medical evidence did not substantiate Mr. Rogers's allegations as to the severity of his psoriasis.[37] Thus, the ALJ was not required to include psoriasis in the hypothetical question. To the extent Mr. Rogers complained that psoriasis prevented him from working in jobs involving food, that aspect of his argument provides no basis for relief because the vocational expert identified jobs that did not implicate food safety.[38]

COPD. COPD "refers to two related, progressive diseases of the respiratory system, chronic bronchitis and emphysema."[39] Both diseases are characterized by "persistent difficulty in expelling (exhaling) air from the lungs resulting in loss of lung function."[40] Mr. Rogers complains that the ALJ erred by characterizing his COPD as non-severe. Like his step-two argument about psoriasis, the argument provides no basis for relief because Mr. Rogers met his burden to show a severe impairment, so his applications proceeded to step three. The record shows the ALJ considered all of the

---

[37] *Accord McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluation of the entire record.").

[38] SSA record at p. 54 (responding to hypothetical question and identifying ticket seller and cashier as available jobs).

[39] Harry W. Golden & Tish Davidson, 2 The Gale Encyclopedia of Med. 1024 (4th ed.).

[40] *Id*.

medical evidence and all of Mr. Rogers's impairments. Even if COPD was a severe impairment, no harm flowed from finding COPD was non-severe.

To the extent Mr. Rogers complained that COPD limited his ability to work, the ALJ included limitations flowing from COPD in Mr. Rogers's RFC. Avoiding respiratory irritants and excessively low or high temperatures can improve function in COPD patients.[41] The ALJ included those limitations in the hypothetical question.

<u>Learning disability</u>. Mr. Rogers based disability in part on a learning disability.[42] He complains that the ALJ erroneously noted that he had worked in a semi-skilled job as a truck driver and suggests that the ALJ failed to develop the record in regard to his learning ability complaint.[43]

The ALJ has a duty to fairly and fully develop the record as to the matters at issue,[44] but the claimant bears the burden of providing medical evidence to prove his alleged disability.[45] Mr. Rogers provided only his testimony. He testified that he

---

[41] *Id*. at p. 1028.

[42] SSA record at p. 190.

[43] Docket entry # 11, p. 18.

[44] *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973).

[45] *Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

completed part of the eleventh grade and attended classes in a resource room.[46] He also stated that he had difficulty reading.[47] This testimony was insufficient to alert the ALJ of the possibility of a severe mental impairment; thus, the ALJ was not required to develop the record about mental impairment before ruling on Mr. Rogers's applications.[48]

Notably, Mr. Rogers reported working as a truck driver off-and-on from 1993 to 2002, hauling materials cross country.[49] The vocational expert classified the work as semi-skilled work.[50] Working for many years in a semi-skilled profession is inconsistent with an allegation of a disabling learning disability. The ALJ did not err by finding that learning disability was not medically determinable.

RFC. In addition to complaining about psoriasis and COPD, Mr. Rogers had other complaints about the RFC determination. Those complaints do not require extensive discussion.

---

[46] SSA record at p. 37.

[47] *Id.*

[48] *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s).").

[49] SSA record at p. 191.

[50] *Id.* at p. 53.

The complaint about Mr. Rogers's age[51] referred to no more than a typographical error.[52] The ALJ correctly stated Mr. Rogers's date of birth—June 14, 1966—and the amended on-set date—February 24, 2009. Per those dates, Mr. Rogers alleged he was disabled at age 42. No basis exists for remanding for the determination of Mr. Rogers's age.

Mr. Rogers also complains that the ALJ did not include avoidance of hazards in his RFC.[53] This complaint refers to another typographical error. The ALJ included "no exposure to hazards" on the sixth page of the unfavorable decision,[54] but failed to include avoidance of hazards in the bold-faced statement of RFC on the fifth page.[55] No harm flowed from the typographical error because the ALJ included the avoidance of hazards in the hypothetical question posed to the vocational expert.[56]

The complaint about the consideration of radiographic imaging[57] fails because no medical evidence supported a further reduction in Mr. Rogers's RFC. Neurosurgeon

---

[51]Docket entry # 11, p. 6.

[52]SSA record at p. 17 (referring to Mr. Rogers as 21 years old).

[53]Docket entry # 11, p. 6.

[54]SSA record at p. 16.

[55]*Id.* at p. 15.

[56]*Id.* at p. 53.

[57]Docket entry # 11, pp. 9-10.

John A. Campbell's treatment notes were the most recent, and thus most probative, evidence of Mr. Rogers's back and neck condition.[58] Dr. Campbell described Mr. Rogers as ambulating independently without muscle spasticity, with a fairly good range of motion in the cervical spine and full muscle strength in both arms.  He reported that Mr. Rogers had a diminished reflex in the right biceps and some slight diminution of light touch in the right thumb and forefinger.  After reviewing radiographic imaging, Dr Campbell stated that a protruding disc at C5-6 had caused some stenosis; that is, a disc had bulged out of its normal resting place and placed pressure on the spinal nerve cord.[59]  Dr. Campbell discussed surgical and non-surgical options, and Mr. Rogers wanted to hold off on surgery to see if things improved over time.  Mr. Rogers did not return to Dr. Campbell or to his PCP for neck or back pain.  The failure to seek treatment indicated that the condition with Mr. Rogers's neck and back pain was not disabling.  Radiographic imaging did not support further reduction of Mr. Rogers's RFC.

The complaint about the lack of a consultative opinion[60] fails because the medical evidence did not implicate the need for a consultative exam.  The ALJ must "determine

---

[58] SSA record at pp. 318-20.

[59] John T. Lohr , 5 The Gale Encyclopedia of Med. 4090 (4th ed.) ("Spinal stenosis is any narrowing of the spinal canal that causes compression of the spinal nerve cord.").

[60] Docket entry # 11, pp. 14-15.

a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."[61] The record included treatment notes from specialists, diagnostic imaging, and observations by treating PCPs. A state medical consultant twice reviewed the medical evidence and opined that Mr. Rogers could do light work.[62] The ALJ further reduced Mr. Rogers's RFC by finding Mr. Rogers needed a sit/stand option and could not climb ladders, ropes or scaffolds. No medical evidence supported a further reduction.

Step five. Finally, Mr. Rogers maintains that the Commissioner did not meet his step-five burden. If the claimant shows he cannot do his past work, the burden shifts to the Commissioner to show work exists in the national economy that the claimant can do.[63] Although Mr. Rogers complains that the ALJ failed to acknowledge and apply that burden,[64] the ALJ correctly stated the Commissioner's burden on the third page of the unfavorable opinion.[65]

---

[61] *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001).

[62] SSA record at p. 246 (on July 1, 2009) & p. 327 (on Sept. 5, 2009).

[63] *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996).

[64] Docket entry # 11, pp. 10-11.

[65] SSA record at p. 13.

Mr. Rogers also suggests that the Commissioner did not meet his burden because the vocational expert did not explain why his testimony conflicted with the Dictionary of Occupational Titles ("DOT").[66] Mr. Rogers's argument flows from the recitation of the DOT code provision for the job of ticket seller.  The ticket seller job is reflected in the transcript of the hearing as code "211.407-030."[67] The actual code provision is "211.467.030."  There are at least two possible explanations for the difference: the vocational expert mis-spoke or the court reporter made a typographical error.  In the absence of a showing harm, the reason does not matter.  Mr. Rogers showed no harm. "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."[68] Mr. Rogers did not prove disability.

**Conclusion**.  Substantial evidence supports the ALJ's decision denying Mr. Rogers's applications.  The ALJ made no legal error.  For these reasons, the court DENIES Mr. Rogers's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

---

[66] Docket entry # 11, pp. 11-12.

[67] SSA record at p. 55.

[68] *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

It is so ordered this 5th day of December, 2012.

                                        _____
                                        UNITED STATES MAGISTRATE JUDGE